KALBACH LUMBER COMPANY, Appellant, v. RED BALL CHAIN STORES COMPANY et al., Appellees.

**MECHANICS' LIENS:** Establishment—**No Lien on Personalty.** There cannot be a mechanics' lien on personal property. But it seems that, when personalty is so put into a structure that it becomes a part of the realty, its subsequent severance, without the fault of the materialman, will not deprive the latter of his lien.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

NOVEMBER 13, 1923.

SUIT to foreclose an alleged mechanics' lien against a lessee of land. The lessee is represented herein by a trustee in bank-

ruptcy, who pleaded a general denial. There was a decree dismissing the petition, and plaintiff appeals.—*Affirmed.*

*Irving C. Johnson,* for appellant.

*C. Ver Ploeg, Devitt & Eichhorn,* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

EVANS, J.—The plaintiff delivered a quantity of building material, pursuant to contract, to the defendant Red Ball Chain Stores Company. This company was a lessee of certain real estate from the defendants Winter and West. The lease was entered into in October, 1920, and was for a term of five years. Immediately after the execution of the lease, the lessee purchased from the plaintiff the material described in plaintiff's petition, for the purpose of putting the leased premises in appropriate condition for its intended use. One year later, the lessee went into bankruptcy, and the defendant Harbach is its trustee. There is no special dispute in the record over the account or over the use which was made of the material. At the time of making the lease, the lessee proposed to establish one of its chain stores, all of which were operated upon a plan known as the "Self Serve." By this term, it is meant that its business was so conducted and its display of goods so arranged that a customer might come into the store and pass through the same and select and take whatever goods he wished. He then carried them to a cashier's desk and settled for them. This method of business called for a well devised plan of arrangement of goods, the details of which had all been worked out by the lessee in other chain stores, and had been adopted as a standard for all its stores. It required a certain arrangement of tables and shelves and other receptacles conveniently placed for customers, and likewise lines of approach through turnstiles and alleys, etc. The material bought of the plaintiff was so bought and used in the construction of this floor scheme. By the terms of the lease, the lessee was to make whatever improvements it desired, at its own expense. The lease also provided that the lessee should have the right to remove all such fixtures as might be placed by it in the leased premises.

The plaintiff does not now claim any lien upon the real

estate, as against the owners, Winter and West. It claims only a lien upon the so-called fixtures here described. Nor do the owners, Winter and West, resist the claim of the plaintiff to such alleged fixtures. In other words, defendants Winter and West make no claim thereto or therein. The controversy is thereby narrowed down to one between the plaintiff and Harbach, as trustee in bankruptcy and the representative of the general creditors. The contention for plaintiff is that the leasehold interest of the lessee at the time it purchased and used the material constituted the lessee an "owner" of land, within the meaning of the mechanics' lien statute, Code Section 3089, and that the so-called fixtures became attached to such leasehold interest as realty, and that plaintiff, therefore, acquired a mechanics' lien upon such leasehold interest and upon the fixtures attached to the realty pursuant thereto. The resisting contention of the defendant trustee is that the construction to which plaintiff's materials were put never became fixtures, in a legal sense, because they were never, either in fact or purpose, attached to the realty or to the building in which they were contained. That is to say, the devices constructed by the lessee for the purpose of its business were at all times detached and movable, and never lost their character as personal property. As an abstract legal proposition, it is doubtless true that, if plaintiff's material had been bought and used for the construction of fixtures attached to the building, the plaintiff would have acquired a mechanics' lien thereon, as against the lessee, and likewise a mechanics' lien upon the leasehold interest of the lessee. Upon the bankruptcy of the lessee, the trustee canceled the lease. This would not necessarily defeat the plaintiff's lien upon the fixtures, even though such fixtures became detachable property upon the expiration of the lease. Though the plaintiff could not acquire in the first instance a mechanics' lien upon mere personal property which had not become a part of any realty, yet, if such personal property had become a part of the realty, and the plaintiff's lien had attached to it as a part of the realty, we are disposed to the view that the plaintiff might still, in equity, maintain its lien upon such fixtures, even after they had lost their real estate character by the cancellation of the lease, without fault or consent on the part of the plaintiff. But, in

order to *acquire* a lien at all, it was essential to the plaintiff that the property should have become a part of the realty. There is no provision of the statute for a mechanics' lien upon mere personal property. The issue between the parties, therefore, is narrowed down to a question of fact: Were these constructed devices at any time affixed to the leased building? The trial court found against the plaintiff upon this issue of fact. Plaintiff's witnesses were examined on that question, and the following is substantially all of the testimony introduced in its behalf:

"The big bulk of material was for tables, shelving, and what might be termed store fixtures. * * * I suppose it was partly a temporary partition, inclosing the oven. When I speak of fixtures, I mean such things as tables and movable shelving and things of that kind. * * * The tables were put in loose. * * * They built a lot of tables,—whole floor, 80 feet deep, of tables and shelving, the shelving right close to 6 feet high, so anyone can reach the top. It is all shelving that can stand alone. It was not necessary to be nailed to the building. The tables are not fastened. * * * Then, on the outside of that, to the west of it, for a distance of 60 feet, there is a row of shelving about 5 feet high. It is not nailed to the wall—just set up there."

We see no escape from the conclusion reached by the trial court.

We do not overlook that there was some floor repair. It appears that a partition was removed, and that such removal exposed the flooring underneath the partition in an imperfect or incomplete state. This floor defect was mended. Just what amount of material was used for that purpose does not appear, but it was manifestly very slight and inconsequential. The decree entered below is, accordingly, affirmed.—*Affirmed.*

Stevens, Arthur, and Faville, JJ., concur.